Cite as 2024 Ark. App. 154

# ARKANSAS COURT OF APPEALS

DIVISIONS III
No. CR-23-322

| | | |
|---|---|---|
| JAYAUN DURHAM | | Opinion Delivered February 28, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION |
| V. | | [NO. 60CR-18-2032] |
| STATE OF ARKANSAS | | |
| | | |
| | APPELLEE | HONORABLE LEON JOHNSON, JUDGE |
| | | |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

A Pulaski County Circuit Court jury convicted appellant Jayaun Durham of first-degree murder, with a firearm enhancement, and first-degree assault. He was sentenced to fifty-five years' imprisonment. On appeal, he challenges the sufficiency of the evidence of his murder conviction. We affirm.

A review of the record reveals that on the evening of April 11, 2018, Durham arrived at James Rideout's apartment. Rideout stepped outside with his stepson, Jeremiah Donahue, and Durham confronted them. There is conflicting testimony as to what Durham said to Rideout and Donahue, but he then fired two shots in the air. Donahue fled to attempt to call 911. Donahue could hear three more shots fired. When Donahue came back, Rideout was on the ground, and Durham was gone. Rideout eventually succumbed to his injuries.

Security footage revealed that the interaction and shooting happened quickly. It caught two males entering the breezeway near the front door and then sprinting toward the parking lot to escape in a silver car. About twenty minutes later, Durham and two other men exited a silver sedan at a Taco Bell and went inside for a meal. Durham did not dispute that he was at Taco Bell that night.

Initially, police developed three suspects: Kendrick Shepherd, Johnterrian Lowe, and Durham. Shepherd was quickly eliminated as a suspect because he was working at Popeye's at the time of the shooting. Lowe was a suspect because Donahue told officers that while he was administering aid to Rideout immediately after the shooting, Rideout told him Lowe had shot him. Lowe is Durham's older brother. He was also eliminated as a suspect based on his cell-phone records and a review of the video of the two suspects at the apartments, due to Lowe being "significantly taller" than his brother.

At trial, the State argued that the two men depicted in the blurry security footage were Durham and another man named Cortez Carruthers. The State's theory was that Durham was the gunman, and Carruthers, although present at the scene of the shooting, was not responsible for Rideout's death. Carruthers testified at trial and confessed that he was present at the scene of the murder with Durham. He avoided criminal liability in connection with the murder, and he confirmed that he had not been offered anything by the State in exchange for his testimony. Carruthers had to be subpoenaed to appear for trial.

Carruthers testified that prior to the shooting, Durham picked him and another friend up so they could purchase drugs. Once they received the drugs, Durham drove them

to the nearby apartment complex where Rideout lived. Carruthers testified that he did not know what they were going to do there and that the only thing Durham told him was that he needed to stop by the complex to look for something.

Carruthers testified that upon seeing Rideout arrive at the complex and enter his apartment on the first floor, he and Durham got out of the car and approached the apartment. Carruthers testified that Durham ordered him to stand by the side of the building with his back against the wall where no one could see him, and he complied. At this point, according to Carruthers, Durham knocked on the door and Rideout exited. Durham said something to Rideout, and shots were then fired. Carruthers testified he did not see Durham holding a gun but instead saw him holding an item in a black, plastic sack. The two men then fled. Carruthers testified that Durham and his brother Lowe look alike, but that Lowe was not present that evening.

Rideout's stepdaughter testified. Her testimony conflicted at times with Carruthers'. She testified that she saw a gunman come around the corner and heard him state, "were y'all the people that shot at me." She said she never observed anything wrapped around the gun. A few days after the shooting, she identified Durham in a photo lineup.

Donahue was also called as a witness. Like Rideout's stepdaughter, Donahue's testimony also conflicted slightly from Carruthers's. Donahue had identified Durham in a photo lineup. He testified that he recalled the gun being covered by a bag. He said that the shooter repeatedly asked, "Where [are] your brothers at?" At trial, despite previously stating

3

Rideout's dying declaration was that Lowe shot him, he recalled that Rideout actually stated "John Lowe's little brother shot me."

Following the State's case, Durham moved for a directed verdict arguing that a "number of witnesses all testified to different things, none of which have been consistent about the appearance of the shooter that was involved in this matter." The court denied his motion. Following the denial, Durham called additional witnesses. Upon resting, he renewed his motion for directed verdict. The court again denied the motion. After closing arguments, the jury deliberated and returned a guilty verdict against Durham on the charges of first-degree murder and first-degree assault. A sentencing hearing followed, and he now appeals.

On appeal, Durham challenges only his first-degree-murder conviction, arguing that because of inconsistencies in the eyewitnesses' testimony, there was insufficient evidence to identify him as the murderer.

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Severance v. State*, 2024 Ark. App. 87, at 10–11, ___ S.W.3d ___, ___. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Whether

the evidence excludes every other hypothesis is left to the jury to decide. *Id.* Further, the credibility of witnesses is an issue for the jury, not the court. *Id.*

A person commits the crime of first-degree murder if he purposely causes the death of another person. Ark. Code Ann. § 5-10-102(a)(2) (Supp. 2023). As previously stated, this court will disturb the jury's determination only if the evidence did not meet the required standards, thereby leaving the jury to speculation and conjecture in reaching its verdict. *Ellis v. State*, 2012 Ark. 65, at 9, 386 S.W.3d 485, 490. This court has held that the testimony of one eyewitness alone is sufficient to sustain a conviction. *Id.*

In the instant case, three eyewitnesses identified Durham as the shooter. Carruthers's detailed account of the crime, alone, is enough as it was not "inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon." *Ellis v. State*, 2012 Ark. 65, at 9, 386 S.W.3d 485, 490. The jury was also able to consider the inconsistencies of the other witnesses' testimony and whether to credit Donahue's testimony that Rideout's dying declaration was changed to "John Lowe's little brother shot me." The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Severance, supra.*

Further evidence was presented that Durham was the shooter. Durham was captured in photographs taken from a security video at a nearby Taco Bell minutes after two men bearing the same appearances were recorded arriving at the apartment complex in a silver sedan, approaching the victim's residence where the shooting took place, and then fleeing the scene in the same car.

Viewing the evidence in the light most favorable to the State, we hold that there is substantial evidence to support Durham's conviction. Accordingly, we affirm the circuit court's denial of Durham's motion for directed verdict.

Affirmed.

HARRISON, C.J., and WOOD, J., agree.

*William O. "Bill" James, Jr.*, and *Drew Curtis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.